```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                       MIDDLE DIVISION

STATE AUTO PROPERTY AND        }
CASUALTY COMPANY,              }
                               }
     Plaintiff,                }     CIVIL ACTION NO.
                               }     03-AR-2676-M
v.                             }
                               }
JOHN SAMUEL ARTHER, et al.,    }
                               }
     Defendants.               }
```

**MEMORANDUM OPINION**

Before the court are cross-motions for summary judgment. Plaintiff, State Auto Property and Casualty Company ("State Auto"), commenced the above-referenced action by filing its complaint on September 29, 2003, against defendants, John Samuel Arther ("Arther"), Don Miles ("Miles"), Clifford Boatwright ("Boatwright"), and Cincinnati Insurance Company ("Cincinnati").[1] State Auto seeks a declaratory judgment that it has no coverage obligations under its auto insurance policy related to a certain automobile accident that occurred in August 2003 in Gadsden, Alabama. 28 U.S.C. § 2201. This court's subject matter jurisdiction is based on the diversity of citizenship between the plaintiff and all defendants under 28 U.S.C. § 1332. Alabama law governs the interpretation and enforcement of the contract at issue.

---

[1] State Auto subsequently added Progressive Specialty Insurance Company ("Progressive") as a defendant, by filing its amended complaint on November 19, 2003.

Boatwright filed his motion for summary judgment first, on July 6, 2004. Next, State Auto filed its motion for summary judgment, or in the alternative its opposition to Boatwright's motion, on July 19, 2004. Finally, Cincinnati and Arther filed a joint motion for summary judgment on August 27, 2004. Based on the evidence submitted in support of the said motions, and in accordance with the following analysis, the court will grant defendants' motions and will deny State Auto's motion.

## *Facts*

The facts giving rise to this action are largely undisputed and relatively straightforward. In August 2003, Miles was attempting to sell his 1990 GMC van. Arther contacted Miles regarding purchasing the van, and the two met over the weekend of August 2-3, 2003, to discuss the possible sale and purchase. At this meeting, Arther orally agreed to purchase the van for $4,500, and gave Miles a $1,000 deposit check. Miles agreed to hold the van until the following Monday, when he and Arther were to meet at Miles' place of business and proceed together to Arther's credit union for Arther to obtain the funds necessary to close the transaction.

According to a statement that Miles gave prior to his deposition, he considered the transaction complete when he received the $1,000 "earnest money" check because he had two other potential buyers and represented to them that he had "agreed to sell" the van to Arther. According to his deposition

testimony, he considered the vehicle sold on Sunday contingent upon Arther's obtaining and presenting him the $3,500 balance of the purchase price.  At this weekend meeting, the parties did not execute a written sales contract or create any written manifestation of the bargain they had reached.

When Arther arrived at Miles' office on Monday, August 4, 2003, Miles was busy attending to other business; and he gave Arther permission to take the van to the credit union to obtain the closing money and to return to Miles' office to close the transaction.  At this time, Miles also gave Arther an unsigned copy of his original title and an unsigned copy of a bill of sale he had prepared in connection with the sale.  Arther took these documents and the van to his credit union, obtained a loan and a cashier's check for $3,500, the remainder of the purchase price, and began driving the van back to Miles' office.[2]

On his way back to Miles' office, Arther was involved in a traffic accident with a motorcycle that Boatwright was driving. Boatwright suffered serious injuries.  Police listed Arther as

---

[2]There is a discrepancy between Miles' and Arther's accounts of their plan for closing the transaction.  Arther testified in his deposition that he was to return to Miles' place of business after obtaining funds from his bank in order to finalize the transaction.  Miles, on the other hand, testified that the plan was for Arther to call him once he had transacted his business at the credit union, at which point Miles would come to the credit union and finalize the transaction there.  Notwithstanding this disputed account of the **plan**, there is no dispute that in **actuality** Arther never called and instead got in the van and began driving back to Miles' office with a cashier's check for the purchase price in hand.

the owner of the van on the traffic incident report.[3]  Following the accident, Arther returned to Miles' office.  Arther gave the $3,500 cashier's check to Miles, and Miles signed both the bill of sale he had prepared and the certificate of title.  Miles then stated that he needed to go outside to remove his license plate from the van and to check the odomoter reading.  At some point prior to the two of them proceeding outside to the van, Arther informed Miles that he had been involved in the accident.

Boatwright has filed a civil action in state court against Arther to recover damages for personal injuries he sustained in the accident.  State Auto insured the van under a policy of insurance issued to Miles.  Cincinnati is Arther's insurer.  Progressive Specialty insures Boatwright, the state court plaintiff, under an underinsured motorist policy in the event neither State Auto nor Cincinnati's policies cover the entire loss sustained by its insured.

### *Analysis*

The parties' arguments in support of their respective motions present a single critical issue – who owned the van at the time of the accident between Arther and Boatwright.  If Miles

---

[3]There is discrepancy between Arther's sworn deposition testimony and an unsworn recorded statement he made two weeks after the accident.  On those two occasions, he was questioned about how he came to be listed as the van's owner on the police report.  On both occasions, he denied that police ever asked him directly whether he was the owner.  Also, on both occasions, Arther stated that the policeman asked for proof of his insurance and that he had said he did not have insurance on the vehicle.  However, in his unsworn statement, Arther stated that he told the officer that he did not have insurance "because I have just purchased the vehicle."  In his deposition, on the other hand, Arther states that he told the officer he did not have his insurance because he was "in the process of purchasing the vehicle."  Arther Depo. p. 10.

owned the van at the time of the accident, State Auto's coverage was in effect because the policy covered permissive users, which Arther undisputedly was.  If, on the other hand, ownership passed to Arther sometime prior to the accident, State Auto's coverage obligations would have lapsed before the accident took place.

State Auto urges the court to adopt the latter position, or to find that genuine issues of fact preclude a finding that, as a matter of fact and law, Miles owned the van.  Ultimately, State Auto requests that the court declare that it owes no duty to defend Arther or pay any judgment entered against him in the state court action brought by Boatwright.  Arther, Boatwright, and Cincinnati urge the court to find that Miles was the owner at the time of the accident and to grant summary judgment accordingly.

The court agrees with defendants that no genuine issue of fact exists and that Miles owned the van at the time of the accident.  Ownership is a question of fact under Alabama law, but there is a rebuttable presumption that ownership lies with the individual listed as the owner on the certificate of title.  As the Alabama Supreme Court put it in *Crowley v. State Farm Mut. Auto Ins. Co.*, 591 So.2d 53 (Ala. 1991):

> [A] certificate of title...is prima facie evidence of the facts appearing on it.  However, a certificate of title is not conclusive evidence of ownership, because ownership can be established by other evidence.  (internal citations omitted).  Therefore, of necessity, the absence of ownership indicated by the absence of a certificate of title...can be rebutted by other evidence of ownership.  For example, ownership or a

> transfer of ownership can be established by evidence of
> a party's taking possession of the vehicle; by evidence
> of a bill of sale that manifests an intent to sell and
> transfer the vehicle and to grant dominion and control
> over it; and by evidence of a transfer of money for the
> vehicle.

*Id.* at 55; *see also Cincinnati Ins. Co. v. Nelson*, 668 So.2d 539, 541 (Ala. 1995).

There is no dispute that, at the time of the accident, Arther did not have a certificate of title bearing his name. Thus, the question becomes whether State Auto has presented evidence sufficient to rebut the presumption that Miles owned the van at the time of the accident. The court finds that it has not.

The undisputed facts in this case establish that none of the three examples of "other evidence of ownership" – possession, bill of sale, and transfer of money – cited by the Alabama Supreme Court support State Auto's contention that Arther owned the van at the time of the accident. *Id.* First, while State Auto argues that there is a fact issue as to when possession transferred, Miles and Arther both testified that Arther was operating the van with Miles' permission. Whether the parties mutually understood this permissive possession was for the purpose of allowing Arther's prospective lender to inspect the van or not, the undisputed fact is that Miles had no intention to transfer ownership to Arther before receiving the balance of the purchase price from him.[4] Because Miles did not receive the

---

[4]State Auto argues in its opposition brief that:
   The sale was clearly made subject to only one
   condition, that Mr. Arther get the additional

balance until after the accident, Arther's permissive possession forces the conclusion that Miles owned the van when Arther wrecked it.

Second, the fact that prior to the accident Miles gave Arther a **copy** of an **unsigned** bill of sale further supports the presumption that ownership remained with Miles until after the accident. After the accident, when Arther paid the purchase price, Miles signed the original bill of sale and his title certificate, and gave the signed documents to Arther. Both parties understood this to be the point at which the transaction was closed and title passed. Viewing the facts in the light most favorable to State Auto, the unsigned copy given to Arther to take to his financial institution is, at best, manifestation of Miles' intent to transfer ownership of the van upon his receipt of $3,500. Arther's pre-accident possession of the copy does not create a genuine issue for trial that ownership had transferred prior to the accident.

Finally, State Auto's reliance on the $1,000 check tendered to Miles as proof of payment to rebut Miles' presumptive ownership is misplaced. The undisputed fact is that Miles took

---

$3,500.00 from the Credit Union. Mr. Arther had
accomplished that condition and had in his hands a
check for $3,500.00...when the accident happened.
Arther did have the check at the time of the accident, but the court
cannot agree with State Auto that **ownership** was clearly intended to
transfer at the point Arther obtained a check for the remainder of the
purchase price. Even if the sales contract was conditional, and even if
Arther satisfied its condition by obtaining the $3,500 check, Arther had
a remaining obligation to give the check to Miles and Miles had a
corresponding obligation to transfer possession to Arther. These
obligations were not fulfilled until after the accident.

the $1,000 from Arther only as earnest money, in consideration for his promise to not sell the van to other interested buyers before Arther could complete the purchase.  Notwithstanding testimony from Miles that he considered the van "sold" when he took this check from Arther prior to the accident, there is no genuine issue that Arther had paid the purchase price.  If Arther had changed his mind the next day, he would not have owned the van, and Miles would not have been automatically entitled to keep the $1,000.  Miles does not deny this fact.  On the contrary, Arther would at most have been breaching his contract to purchase the van, and Miles would only be entitled to keep the $1,000 to the extent he could prove that Arther's breach of their agreement had caused him money damages.

At risk of re-stating the obvious, neither of the parties considered the transaction closed until the money was paid, **after** the accident in question.  The only party who continues to wish the transaction had closed and ownership had transferred before the accident is Miles' insurer.  Ownership, however, is a matter of the intent of the parties to the sales contract, not a matter of the hindsight or wishful thinking of one of the parties' liability carrier.  The certificate of title, as well as other evidence supports the conclusion that ownership transferred after the accident in question.  *See Nelson*, 668 So.2d at 541 (holding that insurer failed to rebut *prima facie* showing that seller owned truck despite fact that buyer had possessed the truck for

over six months and had made several payments for the truck). Because the undisputed evidence requires a finding that Miles owned the van when Arther wrecked it, State Auto's motion for summary judgment is due to be denied, and defendants' motions for summary judgment are due to be granted.

This conclusion leaves open the question of what the declaration of the court should be. State Auto, in its complaint, sought a declaration from the court that it is "not obligated to defend nor pay any judgment" against Arther in the state court action. State Auto further requested that Cincinnati's policy insuring Arther "be declared the primary policy" for Boatwright's injuries. Boatwright, on the other hand, envisions that the court's judgment should include a declaration that:

> [O]n August 4, 2003 there was in force and effect liability and umbrella insurance coverage that State Auto provided to its insured Don Miles; that the State Auto policies provided coverage to drivers of Miles' van who were operating the van with the permission of the insured Miles; that at the time of the accident made the basis of the State action Miles was the owner of the van and defendant John Samuel Arther was operating the van with permission; that State Auto is obligated to defend and pay any judgmenjt which is rendered in favor of Boatwright and against the defendant John Samuel Arther.

The court has held that defendants are entitled to summary judgment; it must now determine the proper scope of its declaration in light of Alabama law.

As State Auto notes in its brief in opposition to

Boatwright's motion, an injured party under Alabama law may not seek a declaration of his rights under an insured's policy prior to his obtaining a judgment against the insured.  *See Maness v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 416 So.2d 979, 981-82 (Ala. 1982).  In this instance, however, State Auto has forced Boatwright into court by seeking a declaration that it owes no coverage related to the damages Boatwright is seeking to recover in state court.  Accordingly, the matter of whether State Auto's policy was in force at the time of the accident is properly a subject of this court's judgment.

At the same time, the court will not endeavor to declare Boatwright's rights as against State Auto under its policy.  Neither will the court endeavor to determine which policy of insurance, State Auto's or Cincinnati's, is the primary policy covering Boatwright's injuries.  The parties have not briefed this issue, and it is better left to the state court, if and when Boatwright obtains a judgment against Arther and it becomes necessary to decide which insurer is primarily responsible.

### *Conclusion*

In accordance with the foregoing, the court will grant defendants' motions for summary judgment, and will deny plaintiff's motion for summary judgment.  A separate and appropriate order and declaration will be entered contemporaneously herewith.

DONE this 11th day of January, 2005.

_____
WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE